528 P.2d 866

**STATE TAX COMMISSION, consisting of Bob Kennedy, Chairman L. Waldo DeWitt and John M. Hazelett, Appellant,**

v.

**RANCHERS EXPLORATION AND DEVELOPMENT CORPORATION, Appellee.**

**No. I CA–CIV 2555.**

Court of Appeals of Arizona, Division 1, Department A.

Nov. 26, 1974.

Rehearing Denied Jan. 2, 1975.

Review Denied Jan. 28, 1975.

N. Warner Lee, Atty. Gen., by Mary Z. Chandler, Asst. Atty. Gen., Phoenix, for appellant.

Evans, Kitchel & Jenckes, P. C., by Leslie T. Jones, Jr., Phoenix, for appellee.

OPINION

DONOFRIO, Presiding Judge.

This appeal by the State Tax Commission is based upon the trial court's ruling that appellee, Ranchers Exploration and Development Corporation did not have to report certain activities as taxable gross receipts under A.R.S. §§ 42–1309 and 42–1310.

In 1971 the Tax Commission performed a random audit of the taxpayer's books. The audit covered the period from July 1, 1968 through March 31, 1971. The audit revealed that appellee did not report as taxable that part of his total gross receipts which were received from the sale of copper starter sheets. Appellee mines copper by a leaching process. Acid is percolated through copper ores and the resulting solu-

tion of acid and copper is then transferred to an electrowinning plant where it is circulated through vats or cells containing thin copper "starter" sheets, each of which weighs about ten to twelve pounds. On the introduction of an electric current the copper is drawn off the solution and adheres to the starter sheets with the result that the accumulation of the copper ions on the starter sheets gradually thickens to form cathodes weighing about 150 pounds each. The cathodes are approximately 99.-9% pure copper and are made up of copper mined by appellee from its Bluebird Mine. Starter sheets are not mined by appellee but are purchased from other parties. Thus, when the copper cathodes are sold the sale proceeds are attributable in part to copper mined by the appellee and in part to copper purchased by appellee. It should be noted that the starter sheets are a physical and inseparable part of the copper cathodes sold by appellee.

The Tax Commission assessed appellee $43,727.16 in additional taxes under A.R.S. § 42–1310(2)(a) on appellee's receipts of $2,177,796.47 for the period of July 1, 1968 through March 31, 1971 from the sale of that part of each cathode which was attributable to the starter sheets. The appellee paid all applicable Arizona taxes on the sale proceeds attributable to the copper mined from the Bluebird Mine.

The sole question presented by this case is whether the proceeds from the sale of that part of each cathode which is attributable to the copper starter sheets purchased by appellee are subject to the tax imposed by A.R.S. § 42–1310(2)(a) on the gross proceeds derived from the business of "[m]ining, quarrying, smelting, or producing for sale, profit or commercial use . . . copper . . . [ore], or other mineral products. . ." § 42–1310 sets out how the tax imposed by subsection A of § 42–1309 shall be levied and collected. Subsection 2 of § 42–1310 reads:

"2. At an amount equal to one per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses:

(a) Mining, quarrying, smelting, or producing for sale, profit or commercial use, any oil, natural gas, limestone, sand, gravel, copper, gold, silver or other mineral product, compound or combination of mineral products, or felling, producing or preparing timber or any product of the forest for sale, profit or commercial use."

Appellee contended in the trial court that the statute imposes a tax on the gross proceeds from the mining of copper and that therefore it is not subject to the tax in dispute for the reason that it did not mine the copper that made up the starter sheets. Appellee bought the starter sheets; they were purchased from various mining companies, primarily the Kennecott Copper Corporation, and the copper in the starter sheets was mined from a mine owned by that corporation or from mines owned by other vendors from whom appellee purchased starter sheets. Appellee argues that the same copper cannot be said to have been mined twice, and since the tax is imposed on the gross proceeds of mining copper, its inapplicability is demonstrated by a plain reading of the statute. We disagree.

Although Arizona's general rules of construction that a revenue statute is to be liberally construed in favor of the taxpayer and strictly against the State and should not be extended to include something not specifically covered by the language of the statute itself, Alvord v. State Tax Commission, 69 Ariz. 287, 213 P.2d 363 (1950); Ebasco Services, Inc. v. Arizona State Tax Com'n, 105 Ariz. 94, 459 P.2d 719 (1969), we do not feel that § 42–1310 is so ambiguous as to bring this rule of construction into play. § 42–1310 is one of several sections specified by § 42–1309 as a transaction privilege tax. In essence it is an excise tax for the privilege of engaging in a particular occupation. Tower Plaza Investments, Limited v. DeWitt, 109 Ariz. 248, 508 P.2d 324 (1973). § 42–1310 is

therefore not a tax upon the sale of items of merchandise, but is a tax upon the privilege of engaging in business as measured by gross income from sales. See State Tax Commission v. Consumers Market, Inc., 87 Ariz. 376, 351 P.2d 654 (1960). In essence, our determination is based upon whether the process used by the appellee fits the definition of "mining, quarrying, smelting, or producing for sale, profit or commercial use." We feel that the process does fit within this phrase of § 42–1310(2)(a) and that therefore appellee is responsible for 1% of the gross proceeds of sale of copper cathodes.

The pertinent portions of § 42–1310(2)(a) specifically provide that the tax imposed shall be levied and collected at an amount equal to one percent of the "gross income from the business" upon every person engaging in the business of "mining . . . or producing for sale, profit or commercial use, any . . . copper . . . or other mineral product, compound or combination of mineral products . . . for sale, profit or commercial use." Thus, the tax is upon more than mining. It is upon producing any copper or other mineral product. In this instance appellee is producing and selling copper cathodes, deriving its gross income from the sale of this product.

We believe that by the use of the hereinabove quoted language the Legislature intended that appellee's gross proceeds from the sale of the copper cathodes, including that portion attributable to the copper starter sheets, would be includable; that is, that the entire gross income is subject to the tax.

Therefore, we conclude that the appellee is responsible for paying one percent of his gross income for the right of engaging in the production for sale of copper. Thus, his tax liability should have included the copper starter sheets as well as what was added to them by his own processes.

Reversed.

OGG and STEVENS, JJ., concur.