669 P.2d 976

**Perry BASSETT and Trudy Bassett, husband and wife; Clifford L. Hayden and Joanne Hayden, husband and wife; Thomas Ray, Jr., and Marlene Ray, husband and wife; Michael Treadwell and Ann Treadwell, husband and wife; Raymond Schneider and Karen Schneider, husband and wife; Bassett, Hayden and Ray, Inc., an Arizona corporation; and Bassett, Hayden, Ray 4 Associates, an Arizona Limited Partnership, Plaintiffs/Appellees,**

v.

**The CITY OF TUCSON, a municipal corporation, Defendant/Appellant.**

No. 2 CA–CIV 4656.

Court of Appeals of Arizona, Division 2.

April 7, 1983.

Rehearing Denied June 1, 1983.

Review Denied Sept. 15, 1983.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by Donald J. Oppenheim, Tucson, for plaintiffs/appellees.

Frederick S. Dean, City Atty. by Michael G. Wood, Tucson, for defendant/appellant.

## OPINION

HATHAWAY, Judge.

The question raised on this appeal is whether appellees, who undertook improvement of their property by hiring private contractors and sold the property within 24 months of completion, are speculative builders under the City of Tucson Business Privilege Tax Ordinance, §§ 19–39.1(2), (3), (6), and (7), and therefore subject to the city's two percent business privilege tax under the contracting classification. We hold that they are under the plain language of the ordinance.

On cross-motions for summary judgment submitted on the pleadings, exhibits and memoranda of counsel, the trial court ruled against the city and entered judgment for appellees in the sum of $28,959.58 plus interest, the assessed amount that had been paid under protest.

The appeal is submitted on stipulated facts which disclose that appellees, a limited partnership, purchased a parcel of real property in May of 1978. They contracted with Lawrence Hickey and Sons, Inc. to build a shopping center and with Magnum Construction Company to build a Winchell's Donut House on the property. The shopping center was completed and an occupancy permit was issued by the city in June of 1979. The shopping center was sold approximately one year later. The city assessed appellees on the gross proceeds of the sale, less specified deductions.

Appellees paid the assessments under protest, contending they were not owner-builders within Tucson Code § 19–39.1(3), nor speculative builders under Tucson Code § 19–39.1(6), nor prime contractors. They also challenged the assessment as an imposition of a double tax on prime contracting. The ordinance has been amended since we dealt with it in *Lincoln Property Company v. City of Tucson,* 131 Ariz. 473, 641 P.2d 1317 (1982). Excerpts from the applicable sections of the Tucson Code will be repeated in our discussion which follows, but to facilitate an overview of the situation, we here set forth pertinent portions of the Tucson Code:

"Sec. 19–39.1(1). *Contracting.* 'Contracting' means engaging in business as a contractor.

Sec. 19–39.1(2). *Contractor.* 'Contractor' is synonymous with the term 'builder' and means a person, firm, partnership, corporation, association or other organization, or a combination of any of them, who undertakes to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structure or works in connection therewith, and includes subcontractors, specialty contractors and developers. For all purposes of taxation or deductions, this definition shall govern without regard to whether or not the contractor is acting in fulfillment of a contract.

Sec. 19–39.1(3). *Owner-builder.* 'Owner-builder' means a person who owns or leases real property within the city, and who acts as a contractor, either himself or through others, in constructing any improvement upon the real property, which real property as improved is held by such person for his use or for rental purposes.

Sec. 19–39.1(6). *Speculative builder.* 'Speculative builder' means an owner-builder, as defined in § 19–39.1(3), who sells the completed project within twenty-four (24) months after its completion date.

Sec. 19–83(7). Owner-builders shall not be liable for the tax imposed in § 39–83(1) with respect to improvements constructed for their own use, or for rental purposes, and they shall be considered as retail purchasers of materials purchased and incorporated into such improvements; provided, however, that an owner-builder who sells such improvement at any time

within twenty-four (24) months after the improvement is substantially completed, meaning legally suitable for the use or occupancy intended, become speculative builders and shall be taxed as primate contractors. The following tax credits will be allowed those owner-builders taxed as prime contractors:

(a) Taxes paid by the previous prime contractors with respect to the improvements.

(b) Amounts of taxes paid previously by the owner-builder in relation to purchases of materials incorporated into the improvements."

To restate the question we must determine on appeal: Are owners, who undertake improvement of their property by hiring prime contractors to do the actual construction and who then sell the property within 24 months of the completion date, subject to the tax imposed on owner-builders who become speculative builders? In our approach to the question, we will bear in mind that tax enactments relating to the same subject should be read together and construed as a whole. *Arizona Department of Revenue v. Maricopa County,* 120 Ariz. 533, 587 P.2d 252 (1978). If the ordinances are ambiguous, they will be liberally construed in favor of the taxpayer and strictly construed against the taxing authority. *Department of Revenue v. Southern Union Gas Company,* 119 Ariz. 512, 582 P.2d 158 (1978).

The parties agree that the property was sold within 24 months. The issue centers on whether appellees, having entered into construction contracts with licensed prime contractors, are subject to taxation as speculative builders. Appellees argue that § 19–83(7) does not state that *any* "owner" who sells property within 24 months after an improvement has been built becomes a "speculative builder," liable for tax payments but only "owner-builders." Thus, they argue, two classifications of owners are created under the Tucson City Code, "mere owners" who are not subject to the tax and "owner-builders." Although the code does not specify a category of "mere

owners," we have no problem with appellees' extrapolating the classification from the code for purposes of analysis. Appellees contend that they are "mere owners" and do not fit into Tucson City Code § 19–39.1(3), which defines "owner-builder" as:

"... [A] person who owns or leases real property within the city, and who acts as a contractor, either himself or through others, in constructing any improvement upon the real property, which real property as improved is held by such person for his use or for rental purposes."

Appellees contend they are placed outside the scope of "owner-builder" by the element requiring that the owner "act[s] as a contractor, either himself or through others." Tucson City Code § 19–39.1(2) defines "contractor" as:

"*Contractor.* 'Contractor' is synonymous with the term 'builder' and means a person, firm, partnership, corporation, association or other organization, or a combination of any of them, *who undertakes* to, or submits a bid to, or does himself *or by or through others,* construct, alter, repair, add to, subtract from, improve, move, erect or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structure or works in connection therewith, and includes subcontractors, specialty contractors, and *developers.* For all purposes of taxation or deductions, this definition shall govern without regard to whether or not the contractor is acting in fulfillment of a contract." (Emphasis added)

Appellees admit that they "undertook" to construct the shopping center and constructed it "by or through others." They maintain that this terminology cannot be isolated and must be read in connection with the other ordinances pertaining to the assessment of a tax on the business of prime contracting. In particular, they note that Tucson City Code § 19–39.1(3) in defining an "owner-builder" repeats the

"either himself or through others" language found in § 19–39.1(2). Appellees contend that the definition by its very existence contemplates that there is a class of property owners who can improve the property they own, but who will not be acting as a contractor in doing so. Otherwise, they argue, the "who acts as a contractor" portion becomes meaningless, and if "owner-builders were intended to encompass all owners who caused their property to be improved," then the definition should say so.

■ We have been unable to follow appellees' argument to a conclusion favoring them. They appear to box themselves in when they acknowledge the city's position to be that the "undertakes" and "by or through others" language included in the definition of a "contractor" in § 19–39.1(2) requires an interpretation defining "owner-builder" to include every owner who improves his property, and not just those who "act as contractors" in doing so. They concede:

"[T]he only way that an owner of property can ever construct an improvement on that property is either 'by himself or by or through others.' There is no possible way known to appellees that improvements can be constructed on property without human participation of some sort and, thus, in every case, an owner of property who constructs an improvement on that property will have done so either 'by himself' or 'by or through others.'"

Appellees oppose the interpretation "taken as literally" as urged by the city, contending that it renders superfluous the language restricting "owner-builders" to owners who "act as contractors." Thus, it appears that appellees have come full circle and simply disagree with the wording of the ordinance. We are convinced, however, that the clear net effect of the language of the governing sections requires the result contended for by the city. See *Pace v. Hanson*, 6 Ariz.App. 88, 430 P.2d 434 (1967). The intended broad sweep of the term "contractor" is confirmed in the last sentence of § 19–39.1(2):

"For all purposes of taxation or deductions, this definition shall govern without regard to whether or not the contractor is acting in fulfillment of a contract."

■ It is easy enough to criticize the terminology of an ordinance. If its meaning is clear, and we find that it is, it should be given effect. *State v. Superior Court for Maricopa County*, 113 Ariz. 248, 550 P.2d 626 (1976); *State Tax Commission v. Ranchers Exploration and Development Company*, 22 Ariz.App. 480, 528 P.2d 866 (1975).

Appellees' concern that a homeowner might become subjected to the tax should he be transferred and of necessity sell his newly-constructed home within the 24 month period is allayed through § 19–39(1), which exempts casual activities:

"*Business* includes all activities or acts, personal or corporate, engaged in or caused to be engaged in, with the object of gain, benefit, or advantage, either directly or indirectly, *but not casual activities or sales*, and includes the acts or activities described and enumerated in Section 19–91." (Emphasis added).

Cf., *State Tax Commission v. Howard P. Foley Co.*, 13 Ariz.App. 85, 89, 474 P.2d 444, 448 (1970), where one transaction through a joint venture was held taxable because it was found not to be a casual activity.

The judgment is reversed with directions that judgment be entered for appellant.

HOWARD, C.J., and BIRDSALL, J., concur.