685 P.2d 1331

**CITY OF PHOENIX, a municipal corporation,**
**Plaintiff-Appellant/Cross-Appellee,**

v.

**SANTA ANITA DEVELOPMENT CORPORATION, a California corporation, and Shopping Center Ventures, Inc., a California corporation, Defendants-Appellees/Cross-Appellants.**

No. 1 CA–CIV 5888.

Court of Appeals of Arizona,
Division 1, Department B.

April 19, 1984.
Review Denied July 17, 1984.

**180**

Andy Baumert, City Atty., by Philip M. Haggerty, Asst. City Atty., Phoenix, for plaintiff-appellant/cross-appellee.

Mohr, Hackett, Pederson, Blakley & Randolph, P.C., by Arthur W. Pederson, Phoenix, for defendants-appellees/cross-appellants.

## OPINION

FROEB, Judge.

This case involves an interpretation of the City of Phoenix privilege license tax ordinance effective prior to January 1, 1978.

■ Where an owner of real property pays a contractor to construct improvements thereon and thereafter sells the improved real property, are the revenues received from such sale revenues from the business of "contracting" within the city sales tax?

Appellant City of Phoenix (hereafter referred to as the City) assessed Santa Anita Development Corporation and Shopping Center Ventures, Inc., (sometimes referred to as the taxpayers) as "contractors" pursuant to § 14–1 of the Phoenix City Code, which provided, in part:

> Contractor—A person who, for either a fixed sum, price, fee, percentage, bonus or other compensation other than actual wages, undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith. *The term "contractor" includes subcontractors, specialty contractors, developers and speculative builders."* (emphasis added)

In summary judgment proceedings based upon the record of evidence produced during city administrative proceedings, the trial court found in favor of the taxpayers and held that they were not contractors within the above-quoted provision of the Phoenix City Code. We affirm.

The facts are essentially undisputed. For the purposes of the administrative hearing and the court proceedings, both Santa Anita Development Corporation (Santa Anita) and Shopping Center Ventures, Inc. (SCV) have been treated as a single entity. The taxpayers are California corporations, whose activities involve development of neighborhood shopping centers and other commercial properties. Company staff performs most of the services required to complete their projects, including site location and analysis, design and construction supervision, financing and leasing. The taxpayers sell some of their shopping center projects to investors upon completion and retain certain properties as

long-term investments. They have developed more than 150 neighborhood shopping centers.

Taxpayer SCV was formed in 1974 for the purpose of penetrating the retail food store market in the Phoenix area for the Alpha Beta food stores. A secondary objective of SCV was to receive income as a return on investment through rental leasing in the projects which were built.

SCV acquired four parcels of unimproved real property and Santa Anita acquired one such parcel. Several unimproved portions of these properties were sold and improvements were built on portions retained.

The taxpayers maintained an office in Phoenix to seek out investment projects and locations. They also had a vice-president in charge of design who was the company liaison with an architectural firm hired to do the actual plans. Taxpayers would, through this design development department, hire an architect on a standard AIA form, or by a separately prepared contract. The architect thereafter hired general and specialty contractors on behalf of the taxpayers to perform various phases of construction activity. The taxpayers would previously make arrangements to borrow on construction loans in order to pay for the projects. The taxpayers sought to sell the completed projects to ultimate owners.

Four out of the five shopping centers at issue herein were leased to Alpha Beta before the construction was actually started. In the remaining case, a major tenant was located before construction started and a local real estate firm was retained to lease these smaller locations. This was also true of the smaller locations in the Alpha Beta market centers.

While the construction activity was going on and negotiations were being conducted with prospective tenants, the taxpayers were either locating or negotiating with prospective purchasers. Leases for the major tenants were normally 20 to 30 years, and those for the smaller tenants were approximately 5 years. Some of the leases were partially in effect while the project was still under construction, and there was at least one instance in which the center was sold prior to the actual physical completion of construction.

The only activity of the taxpayers subsequent to the taxed construction activity was the sale of certain parcels of real property.

Although taxpayers hired architects and entered into contracts with qualified contractors for the construction of improvements, the taxpayers did not perform any construction work themselves in connection with any of the transactions upon which the City sought to impose a tax. Neither taxpayer is or was a licensed contractor in the State of Arizona, or any other state. No building permits were ever issued in the name of the taxpayers. Neither taxpayer employed any persons who performed construction or supervised construction. They did not contract with subcontractors, but dealt with general contractors. The taxpayers did no work as owners-builders. Where improvements were made, the improvements were not built pursuant to agreements with persons who ultimately purchased the properties from taxpayers.

Alleging that the taxpayers were contractors, the City imposed its tax on the gross receipts from the sales to the buyers of the five shopping centers and allowed deductions for amounts paid to "subcontractors." However, the "subcontractors" were in fact general contractors.

The audit period in this case was from July 1974 through June 1978. As a result thereof, the City made assessments totaling $65,782.10, including tax, interest and penalties for the audit period. The tax is imposed at the rate of 1% upon the gross income from the contracting business, pursuant to § 14–2(a)(13) of the Phoenix City Code.

Following these assessments, taxpayers timely petitioned for redetermination of the tax, which was filed with the city auditor in accordance with city administrative procedures. The petition alleged several grounds for setting aside the assessment.

The matter proceeded to an administrative hearing at which considerable testimony and exhibits were introduced. The hearing officer ruled that the assessments should be set aside, basing his decision on the fact that the taxpayers were not engaged in "contracting" activity so as to be subject to the City of Phoenix privilege license tax.

The City of Phoenix filed this action in superior court to overturn the decision of the city audit department. Cross-motions for summary judgment resulted in judgment in favor of the taxpayers and against the City.

The position of the City is that the taxpayers are developers and therefore their activity constitutes contracting under the City Code. The taxpayers argue that they are not "contractors" within the meaning of the Code and that they received no income from "contracting."

■ As in any case construing a taxing statute, we apply the well-settled rule that the statute must be construed liberally in favor of the taxpayer and strictly against the taxing authority. *Ebasco Services, Inc. v. Arizona State Tax Commission,* 105 Ariz. 94, 459 P.2d 719 (1969); *Wenner v. Dayton-Hudson Corp.,* 123 Ariz. 203, 598 P.2d 1022 (Ariz.App.1979); *Dennis Development Co., Inc. v. Department of Revenue,* 122 Ariz. 465, 595 P.2d 1010 (Ariz. App.1979).

■ At the outset, there is no evidence that taxpayers received any revenue from the activity which was taxed. Section 14–1 of the City Code, earlier quoted, provides in the first sentence that a contractor is one who performs for a "fixed sum, price, fee, percentage, bonus or other compensation other than actual wages, . . . ." There is no evidence in this record that any of the foregoing forms of compensation were received by the taxpayers. Ultimately, the improved properties were sold and the proceeds of the sale were received by the taxpayers, but it cannot be said that the proceeds were the result of "contracting." The taxpayers therefore are not contractors within the City Code. When considered in its totality, it is clear that the contracting activity which did take place was performed by persons or entities with whom the taxpayers had contracted, but not the taxpayers themselves.

■ The City points to the last sentence of § 14–1 of the City Code and argues that the taxpayers must be contractors because they are developers. Aside from the fact that the ordinance provides no definition or objective criteria to determine who or what is a "developer," the argument is logically unsound. The term "contractor" includes "developer," but not every developer is a contractor. The taxing provision relates only to that which can be called "contracting," and if "contracting" is involved, then the last sentence in § 14–1 informs us that a "developer" is included. In other words, the tax provision does not purport to tax contractors *and* developers, but rather developers who are contractors. The last sentence of § 14–1 does not create a separate tax.

> [I]t is especially important in tax cases to begin with the words of the operative statute. We have repeatedly said that such words will be read to gain their fair meaning, but not to gather new objects of taxation by strained construction or implication.

*Arizona State Tax Comm'n v. Staggs Realty Corp.,* 85 Ariz. 294, 297, 337 P.2d 281, 283 (1959).

While there are no Arizona decisions construing the City's contracting tax provision, there are several decisions construing a comparable *state* statute set forth at A.R.S. § 42–1310(2). Initially, we note that the contracting tax is a tax on business activity and is not a sales tax. *State Tax Comm'n v. Ranchers Exploration and Development Corp.,* 22 Ariz.App. 480, 528 P.2d 866 (1974). The state statute imposes the tax on the "gross income from the business [of] . . . Prime contracting." A.R.S. § 42–1310(2)(i). "Contracting" is defined as "engaging in business as a contractor." A.R.S. § 42–1301. Prior to 1958, the definition of "contractor" in the state statute paralleled that of the City. In 1960

the following provision was added to the state statute: "For all purposes of taxation or deduction, this definition shall govern without regard to whether or not the contractor is acting in fulfillment of a contract." A.R.S. § 42–1301(4). Although the City did not add this language to its ordinance, it did add the language earlier discussed, which we again quote: "The term 'contractor' includes subcontractors, specialty contractors, developers and speculative builders." In all other respects, the state and City of Phoenix provisions setting forth the activity subject to tax are identical.

The City points out that these amendments were made in response to the decision of the Arizona Supreme Court in *Moore v. Smotkin*, 79 Ariz. 77, 283 P.2d 1029 (1955) interpreting the then existing state statute which taxed contracting activity. That case involved a builder who had been building and selling homes on a speculative basis. The state assessed its tax on his business activity and the builder objected on the ground that he did not have a contract for the sale of homes when he built them, and therefore he could not be a contractor within the definition of that term. The court agreed and rejected the imposition of tax against the builder.

The City argues that while the amendment to the City Code is different from that in the state statute, it nevertheless indicates an intention to tax developers even if they are not contracting under § 14–1. It contends that by adding the term "developers" to the definition of contractors, the City intended to tax developing activity as well as contracting activity. We reject this for the reasons earlier stated.

■ If the City intended to tax development activity as such, it failed to set this forth in clear language. We reject the interpretation placed on the ordinance by the City and adopt the interpretation made by the city hearing officer:

The taxable activity the City seeks to tax is contracting. The elements of that activity are specified in the definition of the term "contractor." The plain language of the Code includes developers *within that term,* however that inclusion does not expand the definition itself, i.e., the elements of taxable contracting activity. The intent is to tax developers engaged in specifically defined contracting activity on their gross receipts from such activity, and not to tax developers on all their activities.

The trial court was correct in granting summary judgment for the taxpayers.

During the pendency of this appeal, Division Two of the Court of Appeals decided a similar case involving the City of Tucson business privilege tax ordinance. *See Bassett v. City of Tucson,* 137 Ariz. 199, 669 P.2d 976 (App.1983). In that case, the court held that owners who undertook improvements of their real property which they thereafter sold came within the taxing ordinance. While there are similarities between the City of Tucson ordinance discussed in *Bassett* and the Phoenix City Code, there are some considerable differences which persuade us that the decision is inapplicable to this case.

One such difference is the inclusion in the Tucson ordinance of critical language found also in A.R.S. § 42–1301(4), but not in the City of Phoenix ordinance. The referred-to language is: "For all purposes of taxation or deductions, this definition [of "contractor"] shall govern without regard to whether or not the contractor is acting in fulfillment of a contract." § 19–39.1(2), Tucson City Code. As we mentioned earlier in discussing the state statute, we give considerable weight to the fact that the quoted language was not included in the Phoenix City Code in effect prior to January 1, 1978. The quoted language goes directly to the question of tax liability in the present case. The quoted language clearly supports the imposition of the contracting tax where the owner-developer improves real property on a speculative basis.

Moreover, the Tucson Code, set forth fully in *Bassett,* spells out specifically that the tax is imposed upon an ownerbuilder

who sells the completed project within twenty-four months after its completion.

In sum, we find *Bassett* distinguishable and therefore it is no support for the City's position.

## THE CROSS–APPEAL

The taxpayers filed a cross-appeal from the order of the Trial court denying their request for costs and attorney's fees. We have previously entered an order that the cross-appeal was timely filed.

 The taxpayers argued in their brief that they were entitled to attorney's fees under both A.R.S. § 12-348 and A.R.S. § 12-341.01(C). At oral argument the taxpayers conceded that A.R.S. § 12-348 was inapplicable; therefore, we need not consider it. We turn next to A.R.S. § 12-341.01(C) which provides for award of attorney's fees where "the claim or defense constitutes harassment, is groundless and not made in good faith." After reviewing the record, we can find no indication that the suit by the City is in this category and therefore affirm the order of the trial court denying attorney's fees.

■ Further, taxpayers contest the order of the trial court dismissing their request for costs as untimely. They point out that A.R.S. § 12-346 requires that the statement of costs "be filed and served within ten days after judgment, unless for good cause shown the time is extended by the court." In this case, the statement was filed more than ten days after judgment was entered and the time was not extended by the court. The taxpayers nevertheless argue that they were entitled to an additional five days to file because the minute entry reflecting the entry of judgment was served by mail. For this, they rely upon rule 6(e), Rules of Civil Procedure. If taxpayers were correct, their statement of costs would have been timely filed. By its own terms, however, rule 6(e) does not apply. It reads:

> Additional time after service by mail. Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail, five days shall be added to the prescribed period. *This rule has no application to the mailing of notice of entry of judgment required by Rule 77(g).* (emphasis added)

*See also Desmond v. J.W. Hancock Enterprises, Inc.*, 123 Ariz. 474, 600 P.2d 1106 (1979). Contrary to taxpayers' argument, the "no application" portion of rule 6(e) is not limited to timeliness of filing an appeal, but applies also to the timely filing of a statement of costs after entry of judgment. Since the statement was not timely filed in this case, the court properly denied allowance of costs.

For the reasons stated, the judgment of the trial court is affirmed.

GREER and GRANT, JJ., concur.