408 S.E.2d 336

**TONY P. SELLITTI CONSTRUCTION COMPANY, Plaintiff Below, Appellee,**

**v.**

**Michael CARYL, State Tax Commissioner, State Tax Department, West Virginia, Defendant Below, Appellant.**

**No. 19918.**

Supreme Court of Appeals of West Virginia.

Submitted May 7, 1991.

Decided July 19, 1991.

---

Jacqueline A. Hallinan Asst. Atty. Gen., Charleston, for appellant.

Jeffrey J. Rokisky Sellitti & Nogay, Weirton, for appellee.

McHUGH, Justice:

In this appeal by the State Department of Tax and Revenue the primary issue is whether "speculative builders" were to be considered as engaged in the business of "contracting" for purposes of the consumers sales and service tax exemption and use tax exemption, at the time in controversy, for purchases of services, machinery, supplies and materials directly used or consumed in the business of "contracting." Unlike the Circuit Court of Hancock County, West Virginia, we believe the then effective consumers sales and service tax and use tax regulations excluding "speculative builders" from the tax exemptions in question for those persons engaged in the business of "contracting" was valid; we also believe, unlike the circuit court, that this distinction between "speculative builders" and "contractors" under the then effective consumers sales and service tax and use tax exemption statutes did not violate equal protection principles. On the other hand, we believe the additions to tax and the tax penalties were vacated properly by the circuit court.

## I

## FACTS

From 1978 through 1982, the taxpayer-appellee, Tony P. Sellitti Construction Company, among other *business* activities, built houses on its *own* lots to its *own* specifications, without a construction contract, with the intent of selling the improved realty eventually to other persons.[1] In the type of business in question the taxpayer purchased and consumed or used various building materials and supplies from both in-state and out-of-state vendors. For these purchases the taxpayer did not pay any consumers sales and service tax (in-state vendors) or use tax (out-of-state vendors).

The then State Tax Department (now the State Department of Tax and Revenue)[2] audited the taxpayer's books and records, and the Business Tax Division of that Department thereafter issued an assessment for consumers sales and service tax and an assessment for use tax. The consumers sales and service tax was for the period January 1, 1978 through December 31, 1982, and the total amount assessed, including tax, interest, addition to tax and penalty, was $8,338.33.[3] The use tax assessment was for the period April 1, 1978 through December 31, 1982, and the total amount assessed, including tax, interest, addition to tax and penalty, was $23,499.10.[4]

The taxpayer timely petitioned for reassessment of the consumers sales and service tax and use tax liabilities, contending that it owed nothing for either of these taxes, as the purchases in question were directly used or consumed allegedly in the business of "contracting," for which there was a tax exemption at the time in controversy under *W.Va.Code*, 11–15–9(6) [1974] (consumers sales and service tax) and *W.Va.Code*, 11–15A–3(3) [1969] (use tax).[5]

1. In contrast, in phases of the economy more conducive to purchases by other persons of real estate lots for building construction thereon by contractors, the taxpayer would, under contract, build houses on *other* persons' lots to *their* specifications. This type of business activity is *not* involved in this case.

2. *W.Va.Code*, 5F–1–2(a)(6) [1989]; *W.Va.Code*, 5F–2–1(f)(1) [1990].

3. The consumers sales and service tax assessment consisted of tax of $5,519.33, interest (at the time) of $1,347.27, addition to tax of $1,318.26 and penalty of $153.47.

4. The use tax assessment consisted of tax of $15,240.16, interest (at the time) of $3,252.84, addition to tax of $3,101.58 and penalty of $1,904.52.

5. The tax exemption statutes in effect at the time in controversy are as follows. *W.Va.Code*, 11–15–9 [1974] provided, in pertinent part, the consumers sales and service tax exemption:

The following sales and services shall be exempt:

After an evidentiary hearing before the then State Tax Department's Office of Hearings and Appeals, the two assessments were affirmed by the State Tax Commissioner as issued.[6]

The taxpayer subsequently appealed timely to the Circuit Court of Hancock County. That court vacated the assessments. The circuit court held that the State Department of Tax and Revenue exceeded its authority in promulgating regulations which exclude "speculative builders" from the exemption for certain purchases by persons engaged in the business of "contracting." The circuit court also held that the consumers sales and service tax exemption statute and the use tax exemption statute unconstitutionally denied equal protection, to the extent that those statutes distinguished between contractors and speculative builders.

> ....
> (6) ... [S]ales of property or services *to* persons engaged in this State in the business of *contracting*, manufacturing, transportation, transmission, communication, or in the production of natural resources: Provided, however, that the exemption herein granted shall apply only to services, machinery, supplies and materials directly used or consumed in the businesses or organizations named above[.]

(emphasis added) (The 1979 and 1981 amendments to other subdivisions of *W.Va.Code*, 11–15–9 are not relevant here. The revision of subdivision (6) and redesignation thereof as subdivisions (5) to (7) by the 1983 amendment occurred after the assessment periods in this case.)

The relevant part of the use tax exemption statute at the time in question, *W.Va.Code*, 11–15A–3 [1969], stated:

> The use in this State of the following tangible personal property is hereby specifically exempted from the tax imposed by this article:
> ....
> 3. Tangible personal property, the gross receipts from the sale of which are derived from the sale of machinery, supplies and materials *to contractors*, or to persons engaged in the business of manufacturing, transportation, transmission, communication or in the production of natural resources in this State[.]

(emphasis added) (The 1979 and 1981 amendments to other subdivisions of *W.Va.Code*, 11–15A–3 are not relevant here.)

Since March 1, 1989, which is after the assessment periods in this case, purchases by a "con-

The State Department of Tax and Revenue brought this appeal.

II

## REGULATIONS ON SPECULATIVE BUILDERS

At the time in controversy the then State Tax Department had promulgated legislative rules and regulations for consumers sales and service tax and use tax purposes. Consumers and Use Tax Regulations ("C.U.T. Reg.") § 1.6(A)(3)(c) (1974)[7] provided, in material part:

> (c) Sales of property or services *to* persons engaged in this State in the business of *contracting*, manufacturing, transportation, transmission, communication, or in the production of natural resources [are exempt]. Said sales, to be *exempt*, must be confined to services,

tractor" of tangible personal property or taxable services for use or consumption in the providing of a contracting service are no longer exempt, but, instead, usually are taxable. *W.Va. Code*, 11–15–8a(a) [1989] (consumers sales and service tax); *W.Va.Code*, 11–15–9(g) [1989, 1991] (same); *W.Va.Code*, 11–15A–3(a)(2) [1987] (use tax; it is stated in essence that use tax exemptions follow consumers sales and service tax exemptions).

6. For the period January 1, 1978 through December 31, 1982, the then State Tax Department notified the taxpayer that the taxpayer was, upon filing a claim for refund, entitled to a *refund* of West Virginia *business and occupation* tax in the amount of $11,184.75, due to reclassification of gross income from contracting ($2.20 tax per $100 of gross income), as reported by the taxpayer, to retail sales derived from "speculative building" activities ($0.55 tax per $100 of gross income).

   The issue of whether the taxpayer was entitled to the business and occupation tax refund was consolidated with the consumers sales and service tax and use tax assessment appeals. Despite its holding that the taxpayer was engaged in contracting for sales and use tax purposes, the trial court inconsistently held that the taxpayer was engaged in a retail sales business for business and occupation tax purposes for the *same* activities.

7. This is the format and numbering system utilized for these rules and regulations prior to publication of the "state register" of state agency rules and regulations, also known as the *W.Va. Code of State Rules*. *See W.Va.Code*, 29A–2–5 [1982].

machinery, supplies and materials directly used or consumed in the businesses named in the preceding sentence.

. . . .

Persons in the business of *contracting*, manufacturing, transportation, transmission, communication, or in the production of natural resources may *purchase tangible personal property* and services *to be used or consumed in the construction of or permanent improvement of real estate without* imposition of consumers *tax on* such *purchases. All other persons, including* but not limited to *speculative builders* or persons constructing for resale, *must pay* consumers *tax on purchases of tangible personalty* and services *to be used or consumed in the construction of or permanent improvement of real estate.*

(emphasis added)

Similarly, C.U.T. Reg. § 3.27 (1974) stated as follows:

*Speculative Builders.*—Speculative or operative builders are engaged primarily in the construction or repair of real property *for sale* or rent and are deemed to be the ultimate consumers of all supplies, materials, or equipment used in the conduct of their business. Therefore, consumers tax is applicable to sales to such operative builders and services rendered for them, and use tax is applicable to their purchases from outside the State.

(emphasis added) C.U.T. Reg. § 3.27 (1974) was identical to a prior regulation, C.U.T. Reg. § 1.99 (1964, 1969).[8]

These regulations distinguish between "speculative builders" and those persons engaged in the business of "contracting." "Speculative builders" are engaged in the business activity of constructing improvements to real property which they own, in accordance with their own specifications, that is, they do not have a realty improvement contract with another person, and they construct the real property improvements under these circumstances, with the intent of selling the improved realty eventually to other persons. The basic "selling" nature of a "speculative builder's" activities is also recognized in *Bassett v. City of Tucson,* 137 Ariz. 199, 200, 669 P.2d 976, 977 (Ct.App.1983), *review denied* (Ariz. Sept. 15, 1983).

In contrast, "contractors" construct improvements to real property which other persons own, in accordance with the other persons' specifications, that is, the realty improvement work or work and materials are furnished in the fulfillment of a realty improvement contract with another person. *See Koppers Co. v. Dailey,* 167 W.Va. 521, 280 S.E.2d 248 (1981) (business and occupation tax case).

The consumers sales and service tax exemption and the use tax exemption, addressed by these regulations, and set forth in, respectively, *W.Va.Code,* 11–15–9(6) [1974] and *W.Va.Code,* 11–15A–3(3) [1969], *see supra* note 5, are for certain purchases by persons engaged in certain businesses, including "contracting" businesses. The consumers sales and service tax and the use tax legislation at the time in controversy did not define "contracting" or any of the other businesses named in these exemptions. A "contracting" business was defined, however, by the related West Virginia business and occupation tax legislation at the time, specifically, *W.Va.Code,* 11–13–1 [1972], which provided (in the last paragraph thereof) as follows: " 'Contracting' shall include the furnishing of work, or both materials and work, *in the fulfill-*

---

**8.** The corresponding use tax exemption regulation was C.U.T. Reg. § 1.6(B)(1)(c) (1974), the relevant part of which stated:

1. Use, within West Virginia, of the following tangible personal property is exempt from the imposition of use tax. Basically, any item of tangible personal property which the sale of or purchase of is exempt from consumers tax is also exempt from use tax.

. . . .

(c) Use of tangible personal property which the receipts from the sale of are not subject to consumers tax. In other words, that tangible personal property which is exempt from consumers tax by reason of § 1.6 A.3 of these rules and regulations is also exempt from use tax. See, within the aforesaid regulation, subsections enumerated (a) through (j) therein.

This exemption includes the use of tangible personal property by persons engaged within this State in the business of transportation, manufacturing, transmission, communication, or in the production of natural resources.

*ment of a contract* for the construction, alteration, repair, decoration or improvement of a new or existing building or structure, or any part thereof, or for the alteration, improvement or development of real property." (emphasis added) [9] This related statutory definition of "contracting" supports the regulations' exclusion of "speculative builders" from the sales and use tax exemptions for certain purchases to be used or consumed directly in "contracting" businesses because *"speculative builders" do not work "in the fulfillment of a contract" for the improvement of real property; instead, they work for themselves.*

For the same reason the taxpayer's reliance upon *Stolze Lumber Co. v. Stratton,* 386 Ill. 334, 54 N.E.2d 554 (1944), is misplaced. That case involved actual "contractors" working under realty improvement contracts with the owners of the premises. *Id.* at 335–36, 54 N.E.2d at 555. In contrast, in the present case the taxpayer in its speculative building activities did not work under realty improvement contracts with the owners of the premises; instead, it worked for itself.[10]

Furthermore, the rules of statutory construction support the regulations in question excluding "speculative builders" from the sales and use tax statutory exemptions for certain purchases to be used or consumed directly in "contracting" businesses. First, "[w]here the language of the statute is of doubtful meaning or ambiguous, rules of construction may be resorted to and the construction of such statute by the person charged with the duty of executing the same is accorded great weight." Syl. pt. 4, *Pennsylvania & West Virginia Supply Corp. v. Rose,* 185 W.Va. 214, 368 S.E.2d 101 (1988) (upholding State Tax Department's interpretation of another sales tax/ use tax statutory exemption). The consum-

**9.** Beginning in 1987, the consumers sales and service tax statute, *W.Va.Code,* 11–15–2(*o*) [1987], defined "contracting" in language almost identical to this business and occupation tax statute's definition of that term. The current version of the consumers sales and service tax statute's definition of "contracting," *W.Va.Code,* 11–15–2(*o*)(1), last amended in 1989, is also very similar. Rather than changing the law, these definitions appear to confirm the existing practical construction by the then State Tax Department of the formerly undefined term of "contracting" under the sales and use tax statutes.

**10.** *Stolze Lumber* held that the "retailers' occupation" tax statute there did not apply to the sales of materials to actual contractors because the contractors would "resell" those materials to the owners of the premises (the contractors' customers) upon incorporation of the materials into the buildings owned by the contractors' customers, and the tax there applied only to retail sales of tangible personal property to the ultimate consumer or user, not to sales for resale.

The West Virginia sales and use tax exemption statutes in question, *W.Va.Code,* 11–15–9(6) [1974] and *W.Va.Code,* 11–15A–3(3) [1969], *see supra* note 5, however, did not accomplish this same "anti-pyramiding" of the tax in a true "contracting" situation, for the sales tax did not apply to "sales" *by* the contractor. In West Virginia the sales tax was not imposed at the time in controversy (and currently is not imposed) on a contractor's furnishing of work or furnishing of materials and work to the owner of the premises. Despite the fact that a contractor, therefore, reasonably could have been

deemed the ultimate consumer or user for purposes of the sales or use tax on purchases of materials and other tangible personal property by the contractor, the legislature at the time in controversy chose to exempt the contractor from sales or use tax on purchases of materials, etc., directly used or consumed in the contracting business.

The legislative rationale for the sales and use tax exemptions for certain purchases by a contractor apparently was that the contractor paid West Virginia *business and occupation* tax on its contracting activities at a relatively *high* rate ($2.20 per $100 of gross income).

In comparison, a "speculative builder," as stated in C.U.T. Reg. § 3.27 (1974), quoted previously in the text, was deemed to be the ultimate consumer or user of materials, etc., purchased by it for direct use or consumption in the speculative building business and was, therefore, subject to sales or use tax on such *purchases.* This administrative conclusion was premised upon the fact that the speculative builder would be the ultimate consumer or user of the materials *as tangible personal property.* The speculative builder's resale of the materials, which became *real* property upon being incorporated into the building owned by the speculative builder, would not be subject to sales tax because sales tax applies only to sales of tangible personal property. *Accord, G.S. Lyon & Sons Lumber & Manufacturing Co. v. Department of Revenue,* 23 Ill.2d 180, 181–83, 177 N.E.2d 316, 317–18 (1961).

The speculative builder, compared with a contractor, paid West Virginia *business and occupation* tax on its retail sales of realty at a relatively *low* rate ($0.55 per $100 of gross income).

ers sales and service tax and use tax exemption statutes in question were ambiguous because the sales and use tax legislation at the time in controversy did not define "contracting." The then State Tax Department reasonably could rely upon the related West Virginia business and occupation tax statute's definition of "contracting," which required the realty improvement work to be "in the fulfillment of a contract[,]" thereby excluding speculative builders, who work for themselves, not "in the fulfillment of a contract" for improvement of another person's realty. This long-standing administrative interpretation is reasonable and is entitled to great weight.[11]

A second rule of statutory construction applicable here is set forth in syllabus point 5 of *Pennsylvania & West Virginia Supply Corp. v. Rose*, 185 W.Va. 214, 368 S.E.2d 101 (1988): " 'Where a person claims an exemption from a law imposing a license or tax, such law is strictly construed against the person claiming the exemption.' Syl. Pt. 2, *State ex rel. Lambert v. Carman, State Tax Commissioner*, 145 W.Va. 635, 116 S.E.2d 265 (1960)."

Consistent with the foregoing, this Court holds that the former consumers sales and service tax and use tax regulations excluding "speculative builders" from the former consumers sales and service tax and use tax statutory exemptions for purchases of services, machinery, supplies and materials directly used or consumed in the business of "contracting," *W.Va.Code*, 11–15–9(6) [1974] and *W.Va.Code*, 11–15A–3(3) [1969], were valid and enforceable during the time they were in effect.

### III

### EQUAL PROTECTION

The circuit court agreed with the taxpayer's argument that the former sales and use tax exemption statutes in question were violative of the equal protection guarantees of the State *Constitution* if such statutes are interpreted as excluding "speculative builders" from the definition of "contracting" businesses. We disagree.

▄▄ The generally applicable fundamental principle is that the powers of the legislature are almost plenary: "The Constitution of West Virginia being a restriction of power rather than a grant thereof, the legislature has the authority to enact any measure not inhibited thereby." Syl. pt. 1, *Foster v. Cooper*, 155 W.Va. 619, 186 S.E.2d 837 (1972).[12] Moreover, in light of the constitutionally required principle of the separation of powers among the judicial, legislative and executive branches of state government, *W.Va. Const.* art. V, § 1, courts ordinarily presume that legislation is constitutional, and the negation of legislative power must be shown clearly:

'In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. [*W.Va. Const.* art. V, § 1.] Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.' Syl. pt. 1, *State ex rel.*

---

**11.** The regulations in this case were promulgated in accordance with *W.Va.Code*, 11–15–28 [1937] and *W.Va.Code*, 11–15A–25 [1951]. Current statutory authority to promulgate state tax regulations is contained in *W.Va.Code*, 11–10–5 [1986].

**12.** The *Constitution of the United States*, particularly the fourteenth amendment thereto, may also inhibit the legislature from enacting certain legislation. Section 1 of the fourteenth amendment provides, in relevant part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

*Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965).

Syl. pt. 2, *West Virginia Public Employees Retirement System v. Dodd*, 183 W.Va. 544, 396 S.E.2d 725 (1990). *Accord*, syl. pt. 1, *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 408 S.E.2d 634 (1991). *See also* syl. pt. 1, *State ex rel. Haden v. Calco Awning & Window Corp.*, 153 W.Va. 524, 170 S.E.2d 362 (1969) (upholding constitutionality of sales tax statutory section).

Accordingly, a facial challenge to the constitutionality of legislation is the most difficult challenge to mount successfully. The challenger must establish that no set of circumstances exists under which the legislation would be valid; the fact that the legislation might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid. *Rust v. Sullivan*, —— U.S. ——, ——, 111 S.Ct. 1759, ——, 114 L.Ed.2d 233, —— (1991).

We now turn specifically to equal protection challenges to legislation. This Court, in syllabus point 2 of *Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989), observed that "[e]qual protection of the law is implicated when a classification treats similarly situated persons in a disadvantageous manner. The claimed discrimination must be a product of state action as distinguished from a purely private activity." *Israel* finally settled, in syllabus point 4, where this state's equal protection concepts, not expressly set forth in this state's *Constitution*, are located implicitly: "West Virginia's constitutional equal protection principle is a part of the Due Process Clause found in Article III, Section 10 of the West Virginia Constitution." *See also* syl. pt. 3, *Robertson v. Goldman*, 179 W.Va. 453, 369 S.E.2d 888 (1988). The scope of our equal protection concepts "is coextensive [with] or broader than that of the fourteenth amendment to

the United States Constitution." *Id.* (in part).[13]

Most legislative classifications, including those which involve economic rights, such as taxation classifications, are subjected to a minimum level of scrutiny, specifically, the traditional equal protection concept that the legislative classification will be upheld if it is reasonably related to the achievement of a legitimate state purpose. We recently reformulated this "rational basis" type of equal protection analysis in syllabus point 4 of *Gibson v. West Virginia Department of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991):

> " ' "Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause." Syllabus Point 7, [as modified,] *Atchinson v. Erwin*, [172] W.Va. [8], 302 S.E.2d 78 (1983).' Syllabus Point 4, as modified, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.*, 174 W.Va. 538, 328 S.E.2d 144 (1984)."

*Accord*, syl. pt. 2, *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 408 S.E.2d 634 (1991).

Judge Haymond, writing for the Court in syllabus point 5 of *United Fuel Gas Co. v. Battle*, 153 W.Va. 222, 167 S.E.2d 890, *appeal dismissed and cert. denied*, 396 U.S. 116, 90 S.Ct. 398, 24 L.Ed.2d 309 (1969), stated this "rational basis" equal protection test in a similar fashion in a case rejecting a challenge to the constitutionality of a classification under the West Virginia business and occupation tax statute:

> A state by its legislature may make reasonable classifications in enacting

---

**13.** The language of *W.Va. Const.* art. III, § 10 is: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his [or her] peers."

statutes[,] provided the classifications are based on some real and substantial relation to the objects sought to be accomplished by the legislation, and a person who assails any such classification has the burden of showing that it is essentially arbitrary and unreasonable.

A corollary principle is that the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511, 517 (1976).

Applying these principles to this case, we believe the distinction between "speculative builders" and "contractors" under the statutes in question does not deny equal protection. Speculative builders, who do not work under realty improvement contracts and who are, instead, essentially engaged in sales of their own improved realty, are rationally distinguished from "contractors," who do work under such contracts with other persons who own the real estate lots. In addition, limiting the entitlement to sales and use tax exemptions for certain purchases by "contractors" to persons who are actual contractors is a legitimate governmental purpose. Finally, all persons actually in the "contracting" classification are treated the same under the statutes in question. As we stated in *Capitol Cablevision Corp. v. Hardesty*, 168 W.Va. 631, 642–43, 285 S.E.2d 412, 419 (1981), "[w]here ... the similarity between two businesses is only superficial and they make different products or perform different services, differential treatment in tax assessment will be upheld."

Based upon the above, this Court holds that the former consumers sales and service tax and use tax exemptions for purchases of services, machinery, supplies and materials directly used or consumed in the business of "contracting," *W.Va.Code*, 11–

15–9(6) [1974] and *W.Va.Code*, 11–15A–3(3) [1969], did not deny equal protection to "speculative builders" insofar as these statutory tax exemptions were interpreted as excluding "speculative builders" from the "contracting" classification.

### IV

### ADDITIONS TO TAX AND PENALTIES

▆▆▆▆ By vacating the tax assessments in their entirety, the circuit court vacated the additions to tax and penalties, in addition to the actual tax amounts and accrued interest. While we believe the taxpayer is liable for the actual tax amounts of the assessments and the nonwaivable interest accruing to the date the tax is paid,[14] this Court concludes, on the other hand, that the circuit court correctly vacated the additions to tax and tax penalties.

*W.Va.Code*, 11–10–18(a)(1)–(2) [1978, 1986] provide, in material part, for an addition to tax for the failure to file a required tax return or to pay any required tax, "unless it is shown that such failure is due to reasonable cause and not due to willful neglect[.]" Similarly, the pertinent part of *W.Va.Code*, 11–10–19(a) [1978] states that a tax penalty is due from any person required to account for and pay over any tax but "who willfully fails truthfully to account for and pay over such tax[.]"[15]

In the present case the taxpayer challenged the tax assessments in good faith, and there has been a substantial legal controversy concerning the validity of the assessments. Accordingly, this Court holds that where, as here, a required tax return is not filed or a required tax is not paid due to a good-faith challenge to the validity of such requirement(s), the failure to file or to pay "is due to reasonable cause and not due to willful neglect," and a court, upon an appeal of a tax assessment in such a case, should vacate the addition to tax or any tax penalty authorized by *W.Va.Code*, 11–10–18 or –19, as amended, even if the

---

**14.** *See W.Va.Code*, 11–10–17(a) [1986] (interest on underpayments).

**15.** The last sentence of *W.Va.Code*, 11–10–19(a) [1978] provides in essence that such a tax penal-

ty is, in an appropriate case, to be imposed *in lieu of* an addition to tax under *W.Va.Code*, 11–10–18 [1978, 1986].

tax and interest portions of the tax assessment are affirmed. *See Pennsylvania & West Virginia Supply Corp. v. Rose,* 179 W.Va. 317, 323, 368 S.E.2d 101, 107 (1988); syl. pt. 8, *United Fuel Gas Co. v. Battle,* 153 W.Va. 222, 167 S.E.2d 890, and 153 W.Va. at 274–76, 167 S.E.2d at 918–20, *appeal dismissed and cert. denied,* 396 U.S. 116, 90 S.Ct. 398, 24 L.Ed.2d 309 (1969).

## V

## CONCLUSION

For the reasons stated in sections II and III of this opinion, this Court reverses the final order of the circuit court to the extent that it vacated the tax and interest portions of the tax assessments. On the other hand, for the reasons stated in section IV of this opinion, we affirm the final order of the circuit court insofar as it vacated the additions to tax and tax penalties. We remand this case with directions for that court to modify its judgment in accordance with this opinion.

Reversed in part; affirmed in part; remanded with directions.