## Case No. 16,690.

### UNITED STATES v. WIGGLESWORTH.

[2 Story, 369.][2]

Circuit Court, D. Massachusetts. Oct. Term, 1842.

CUSTOMS DUTIES—CONSTRUCTION OF TARIFF LAWS —INDIGO.

1. Act July 14, 1832, c. 227, § 24 [4 Stat. 583], levies a duty of 15 per cent. ad valorem, on indigo. Act March 2, 1833, c. 55, § 5 [Id. 629], declares, that it shall be free from duty after June 30, 1842. Act 1841, c. 24, § 1 [5 Stat. 463], levies a duty of 20 per cent. ad valorem, on all articles imported into the United States after September 30, 1841, which were then free or chargeable with a duty less than 20 per cent. ad valorem, except on certain enumerated articles, among which is indigo, "which shall pay respectively the same rates of duties imposed upon them under existing laws." Held, that the act of 1841 did not lay a permanent duty of 15 per cent. ad valorem, on indigo, but left the duty thereupon as it stood under the act of 1833, and to expire after the 30th of June, 1842, and, therefore, that no duty was due upon it by Act Aug. 30, 1842, c. 270, § 25 [5 Stat. 548].

[Cited in State v. Pullman's Palace-Car Co., 64 Wis. 103, 23 N. W. 874.]

2. Statutes levying taxes or duties, on subjects or citizens, are to be construed most strongly against the government, and in favor of the subjects or citizens, and their provisions are not to be extended by implication beyond the clear import of the language used.

[Cited in U. S. v. Athens Armory, Case No. 14,473; Devereaux v. City of Browneville, 29 Fed. 753.]

[Cited in City of Memphis v. Bing (Tenn. Sup.) 30 S. W 746; Re Will of Euston, 113 N. Y. 178, 21 N. E. 88; Green v. Holway, 101 Mass. 248; Hale's Estate, 161 Pa. St. 182, 28 Atl. 1071; Hale v. Commissioners of Hampshire, 137 Mass. 114; Schilling v. State, 116 Ind. 202, 18 N. E. 682. Cited in brief in State v. Grant, 74 Mo. 34. Cited in State v. Pullman's Palace-Car Co., 64 Wis. 101, 23 N. W. 873.]

Debt for the recovery of duties, alleged to be due upon certain cases of indigo, imported by the defendant [Thomas Wigglesworth] into the port of Boston. The case came before the court upon an agreed statement of facts as follows: The defendant was the owner of the said cases of indigo, which were laden on board of the American ship ——, at a port east of the Cape of Good Hope; and which sailed therefrom for Boston before the first day of September, 1842, and arrived safely. At the time of her arrival, the collector considering this article to be free of duty under the act of 1833 (chapter 354, § 5), and subsequent acts, permitted it to be entered and landed accordingly. But he was subsequently instructed by the treasury department, that indigo was at that time subject to a duty of 15 per cent., by virtue of the acts of 1832, c. 227, § 24, and 1833, c. 55, § 5, and 1841, c. 24, § 1, and 1842 (establishing the last tariff) c. 270, § 25. And this suit is brought for the recovery of such alleged duty on those cases.

F. Dexter, U. S. Dist. Atty.

C. G. Loring, for defendant.

STORY, Circuit Justice. The question in this case is, whether, under the agreed statement of facts, the indigo imported was, under the duty act of the 11th day of September, 1841, c. 24, and the act of the 30th of August, 1842, c. 270, liable to pay the 15 per cent. duty, imposed by the act of the 2d day of March 1833, c. 55, commonly called the "Compromise Act," or was entitled to importation free of duty. The act of 1842, c. 270, in the 25th section, expressly exempts from its operation all cases of goods "shipped in a vessel bound to any port of the United States, actually having left her last port of lading eastward of the Cape of Good Hope, or beyond Cape Horn, prior to the 1st of September,

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters. Jr.. Esq.]

[2] [Reported by William W. Story, Esq.]

1842," in which predicament the indigo, upon which the present duty is claimed, actually is. The 25th section then proceeds as follows: "And all legal provisions and regulations existing immediately before the thirteenth day of June, 1842, shall be applied to importations, which may be made in vessels, which shall have left such last port of lading eastward of the Cape of Good Hope, or beyond Cape Horn, prior to the said 1st day of September, 1842." So that, according to the language and purport of this enactment, goods in the predicament above stated are to pay duties or not, according to the provisions and regulations of the laws in force immediately before the 30th of June, 1842. What, then, were the provisions and regulations as to duties on indigo, in force immediately before the 30th of June, 1842? They were in effect those, which were established by the act of the 14th of July, 1832, c. 227, as modified by the act of the 2d of March, 1833, c. 55, and by the act of 1841, c. 24. The act of 1832, in the 24th clause of the second section, levied a duty on indigo of 15 per cent. ad valorem. The act of 1833, in the 5th section, declared, that indigo should be free from duty from and after the 30th day of June, 1842. Now, if the case had stopped here, upon these two acts, there would have been no ground of doubt, that indigo was to be liable until the 30th day of June, 1842, to the duty of 15 per cent. ad valorem; and that indigo imported after that period was to be free from duty. But then came the duty act of 1841, c. 24, which provides, "that on all articles imported into the United States, from and after the 30th day of September, 1841, there shall be laid, collected, and paid on all articles, which are now admitted free of duty, or which are chargeable with a duty of less than 20 per cent. ad valorem, a duty of 20 per cent. ad valorem, except on the following enumerated articles (among which indigo is enumerated,) which shall pay respectively the same rates of duties imposed on them under existing laws." The act of 1842, c. 270, would by its general provisions have reached the present case, but for the exception contained in the 25th section already alluded to; and, therefore, that act may be laid out of our consideration, except so far as it leaves the present case to the operation of the legal provisions and regulations existing immediately before the 30th day of June, 1842.

How, then, stands the case before the court? By the act of 1833, indigo was subject to a duty of 15 per cent. ad valorem, until the 30th day of June, 1842. At the time of the passage of the act of 1841, it was still subject to that duty (the prescribed period of the repeal of the duty not having then arrived); and the act of 1841, by the exception, left indigo to pay the rate of duty (15 per cent.) imposed on it "under the existing laws." Some stress was laid at the argument upon the word "under," as used in the first section of the act of 1841; and it was said that "under

existing laws" means now imposed by virtue of the existing laws, whereas, "by existing laws" would mean imposed according to the provisions of existing laws. Upon this interpretation it is said, "imposed under a law" means rightfully collected under a law; and, "imposed by a law," means provided for by the law. I confess that I do not feel the force of the distinction as applied to a case of this sort. It strikes me that a duty imposed by a law, and a duty imposed under a law, are precise equivalents in meaning. No duty is collectable or payable unless it is authorized by law; and if authorized by law, it is then properly said to be imposed by the law, and to be collectable and payable under the law; that is, by or in virtue of the law. We familiarly say that the courts of the United States have a certain jurisdiction under the judiciary act of 1789, c. 20 [1 Stat. 73], by which we certainly mean no more than that the jurisdiction is conferred by that act; that is, it is exercised in virtue of and under the authority of that act. It would be quite too perilous to found an interpretation of any law upon a verbal distinction so refined and subtile, and a fortiori, to found such a distinction in cases of revenue laws, which are designed to operate upon the public at large, and are supposed to use words in the senses belonging to the familiar language of common life and commercial business.

The question then resolves itself into this: Whether the first section of the act of 1841, upon its true intendment and interpretation, meant to impose a permanent duty of 15 per cent. ad valorem, upon indigo and the other excepted articles, or whether it meant to levy that duty as long as the act of 1833 authorised the same duty to be levied, and no longer; that is to say, until the 30th of June, 1842, and then to leave it free. The question is certainly not without embarrassment and difficulty, from the obscurity of the language used, as well as from the loose mode of engrafting the provisions of one revenue statute apparently as a permanent character upon the provisions of another revenue statute, apparently of a temporary character and duration, and imposing varying duties, at different times, upon the same articles. Upon the best consideration which I have been able to bestow upon the subject, my opinion is, that the act of 1841 left the act of 1833 to its full and entire operation upon indigo, and the other excepted articles, without adding to, or varying, or prolonging the period, during which the duty imposed thereon was to be levied. In other words, the act of 1841 did not intend to levy a permanent duty of 15 per cent. ad valorem upon indigo, but left the duty, as it stood, under the act of 1833, and to expire, as that act had provided, after the 30th of June, 1842. My reasons for this conclusion are these: In the first place, it is, as I conceive, a general rule in the interpretation of all statutes, levying taxes or duties upon subjects or citizens, not to extend their provisions, by im-

plication, beyond the clear import of the language used, or to enlarge their operation so as to embrace matters, not specifically pointed out, although standing upon a close analogy. In every case, therefore, of doubt, such statutes are construed most strongly against the government, and in favor of the subjects or citizens, because burdens are not to be imposed, nor presumed to be imposed, beyond what the statutes expressly and clearly import. Revenue statutes are in no just sense either remedial laws or laws founded upon any permanent public policy, and, therefore, are not to be liberally construed. Hence in the present case, if it be a matter of real doubt, whether the intention of the act of 1841 was to levy a permanent duty on indigo, that doubt will absolve the importer from paying the duty beyond the period, when it would otherwise be free.

In the next place, I think, that the natural meaning of the language of the first section of the act of 1841, justifies, if it does not absolutely require, this interpretation. The language is not, that the present existing rates of duty shall continue hereafter to be levied upon indigo, and the other excepted articles, which would be the appropriate language, if congress intended to make the levy of the duty permanent; but the language is, that indigo and the other excepted articles "shall pay respectively the same rates of duty imposed on them under existing laws;" that is, the existing laws shall regulate the rates of duties upon these articles throughout, and the act of 1841 shall have no operation whatsoever upon them. The exception takes them all out of the purview of the act, and leaves them where it found them, under the dominion of the act of 1833, and the other acts then in force, and of those only. Now, construing the language in this way, it is plain that the duty on indigo ceased on the 30th of June, 1842, by the very limitations of the act of 1833. The argument, addressed at the bar to this point, has great cogency. Suppose the act of 1833 had laid a duty on indigo, varying in its amount at different periods, between the passage of the act of 1833 and that of the 30th of June, 1842, either higher or lower than 15 per cent.; what ground would there be to say, that the act of 1841 contemplated a repeal of such a varying duty, and fixed a uniform permanent duty on the articles of 15 per cent.? I profess, that I am unable to see any ground, upon which such a construction could be maintained. And yet, if it be not maintainable, there is the same reason for giving effect to the repeal of the whole duty provided for by the act of 1833, as there would be for giving effect to such a varying duty. In the one case there would be a partial cesser, in the other a total cesser of the original duty. But the interpretation of the act of 1841 must be the same in both cases.

My view of the whole matter, then, is this, that the duty imposed on indigo "under the existing laws," before the act of 1841, was

a duty of a limited duration: it was 15 per cent. until the 30th of June, 1842, and then it was declared that the article was free of duty. That declaration was as much a part of the "existing laws" as the levy of the duty itself. If the duty up to the 30th of June, 1842, was leviable "under the existing laws," the exemption was, after that period, equally "under the existing laws." They were both inseparable adjuncts in the contemplation of the act of 1833. They are not severed in terms, nor, in my judgment, are they severable by any intendment of the act of 1841, in its actual provisions or its avowed objects. And, upon the whole, my opinion is, that judgment upon the agreed facts ought to be for the defendant.