# WASHINGTON ELECTRIC VEHICLE TRANSPORTATION COMPANY

*v.*

# DISTRICT OF COLUMBIA.

---

TAXATION; LICENSE TAX; PUBLIC VEHICLES; STATUTORY CONSTRUCTION.

1. An electric carriage or automobile, although a vehicle, does not belong to the class or classes of vehicles made the subject of license tax by subsection 26 of the act of the late legislative assembly of this District of August 23, 1871, imposing a tax on the proprietors of " hacks, cabs, omnibuses, and other vehicles for the transportation of passengers for hire," not having been known and in use at the time of the passage of that act.

2. A statute imposing a license tax will, in case of doubt, be construed most strongly against the government and in favor of the citizen.

No. 1155.   Submitted March 4, 1902.   Decided April 1, 1902.

IN error to the Police Court of the District of Columbia.

*Judgment reversed.*

The COURT in its opinion stated the case as follows:

This case is brought here on a writ of error to the police court of this District.   The question presented by the record is as to the proper construction of a provision in the license law of the District, passed by the late legislative assembly, and approved on August 23, 1871, in respect to the proprietors of hacks, cabs, omnibuses, and other vehicles for the transporting of passengers for hire.

By the information filed in the police court, the Washington Electric Vehicle Transportation Company, a corporation, the defendant in this case, was charged and informed against, that it was, on the 1st day of May, and on divers

days and times between the 1st day of May and the 15th day of June, 1900, then and there "the proprietor of a certain vehicle for the conveyance of passengers for hire, and, as such, did fail and neglect to secure a license for said vehicle and pay the license tax therefor, contrary to and in violation of an act of the late legislative assembly of the District of Columbia, approved August 23, 1871, and constituting a law of the District of Columbia."

The section of the act of the legislative assembly upon which this information is founded, is as follows:

"The proprietors of hacks, cabs, omnibuses, and other vehicles for transporting passengers for hire, shall pay annually, as follows: Hacks and carriages, ten dollars; one horse cabs, six dollars; omnibuses, ten dollars; street cars drawn by one horse, three dollars, and by two horses, six dollars; other vehicles capable of carrying ten passengers or more at one time, ten dollars."

This is a provision, among a great many others, in a statute providing a system of municipal licenses and taxes, entitled "An act imposing a license on trades, business and professions practiced or carried on in the District of Columbia;" and which was passed and approved, August 23, 1871.

The defendant pleaded not guilty to the information, and, upon trial, it was found guilty and duly sentenced.

The defendant took an exception to the ruling of the police court upon a prayer of the defendant, and thereupon applied for and obtained a writ of error to bring the case into this court.

The facts as stated in the bill of exception are undisputed, indeed are agreed upon by the counsel of the respective parties; and from these it appears that the defendant company is the owner and proprietor of certain electric vehicles or automobiles, which are rented or hired to persons in the District of Columbia who desire to make use of the same in traveling about said city; that said defendant is the owner of certain electric omnibuses or coaches, which are hired to three of the hotels in the city of Washington,

for the conveyance of the guests thereof, and to be used in transporting such guests from the depots to said hotels and *vice versa,* for which service a charge is made; that the defendant did not apply for, or take out a license authorizing it to assign said omnibus or coach to the hotels for the purpose of carrying the guests of said hotels to the depots, and conveying them to the hotels, and did not apply for or take out a license or pay a license tax for other electric vehicles used in transporting for hire, individuals from place to place in the city, and kept in the barn of the defendant for hire.

It is further stated as a fact that the defendant did tender and has at all times tendered itself willing and ready to submit to any reasonable regulations, provided its business was properly classified, but has denied the right of the District of Columbia to assess a license fee against it under the terms of the act of the legislative assembly referred to, and for the reason that said act does not apply to vehicles of the class used by the defendant.

Such being the contention of the defendant, it prayed the court below to rule as matter of law, that the said act of the legislative assembly, passed and approved August 23, 1871, and referred to in the information recited, and in the evidence contained in the exception, and particularly the 26th section thereof, was inapplicable to the business carried on by the defendant in supplying electric vehicles to persons at a reasonable fee and in supplying the said electric omnibus or coach or other carriage to the Hotel Raleigh, for the use set forth in the evidence. But the court refused to rule as prayed, and held that said act of the legislative assembly did apply to the said vehicles of the defendant. To which ruling the defendant excepted.

*Mr. George E. Hamilton* and *Mr. Michael J. Colbert* for the appellant:

1. If the section of the act upon which this information is based is not considered alone, but with reference to all

parts of the act, it would seem that it must be held inapplicable to the defendant. Potter's Dwarris on Statutes, 184. And if the two acts of the assembly of 1871 are considered together, it must clearly appear that the information is without authority in law, and that these two statutes may be considered and compared in order to find out the intent of the law maker has been held almost invariably by the courts of this country. Potter's Dwarris on Statutes, 188, 189. In *Patterson* v. *Winn,* 11 Wheat. 385, it is held that several statutes that are *in pari materia* are to be construed as one statute in explaining their meaning and import. Not only are these two acts to be considered together, but the police regulations subsequently made and bearing upon the same subject, may be construed in connection with said acts to show that not only at the time of the passage of said acts, but for a quarter of a century thereafter, the vehicles intended to be licensed and taxed were vehicles drawn by horses. Not only may contemporaneous and prior statutes be considered in construing a given act, but a subsequent statute may often aid in the interpretation of a prior one. Am. & Eng. Encyc. of Law, Vol. 23, p. 315; *United States* v. *Freeman,* 3 How. 564; *Vane* v. *Newcome,* 132 U. S. 235; *Stout* v. *Board of Commissioners,* 107 Ind. 343.

2. Statutes imposing public burdens in the form of taxation are to be strictly construed, and where there is an ambiguity in the language, which raises a doubt as to the legislative intent, such doubt must be resolved in favor of the persons upon whom it is sought to impose the burden. *Adams* v. *Bancroft,* 3 Sumn. (U. S.) 387; *United States* v. *Wigglesworth,* 2 Story (U. S.) 369; *Green* v. *Holway,* 101 Mass. 248; *Sewell* v. *Jones,* 9 Pick. 412; *Powers* v. *Barney,* 5 Blatchf. (U. S.) 202. In view of the fact, therefore, that electric carriages were, at the passage of the act referred to, unthought of, and in view of the evident intention of the legislators to tax only vehicles that were drawn by horses, which were the only vehicles in operation at that time, it would seem that the provisions of said acts

30

cannot be held to apply to the carriages or conveyances owned by the defendant company, and that the judgment below should be reversed.

*Mr. Andrew B. Duvall* and *Mr. E. H. Thomas* for the appellee:

1. That the motive power applied to vehicles transporting passengers is electricity, does not exempt *omnibuses, coaches,* or vehicles from the provisions of said act of the late legislative assembly, appears from an examination of the law. The title of this act, in connection with the first section, and the subsequent sections, clearly demonstrates (we think) that the license tax is imposed upon the business of transporting passengers for hire in any class of vehicles. Resort to this title is not of necessity required, but if there be any ambiguity or doubt in the application of the law in this case, (we believe) that doubt is by this title to be resolved against the appellant. *Connecticut Mut. L. Ins. Co.* v. *Albert,* 39 Mo. 183. While carts, wagons, and drays are classed as to the license tax differently from hacks, cabs, and omnibuses and street cars, there seems to be no reference to the motive power, except in the case of one-horse cabs and hand-carts. It is the vehicle itself in every instance which is the subject of the tax, not the animal or other power drawing or moving it. This is shown: 1. By *the title of the act,* which is addressed to the trade, business, and profession practiced or carried on. 2. By the 1st section of the act, which declares that no person shall so engage until he shall have obtained a license. (By section 22 the word "person" includes corporations.) 3. By section 3, which declares when licenses for hacks, carriages, omnibuses, etc., shall begin and expire. 4. By section 18, which provides a badge for the driver of each "*licensed vehicle* for the transportation of passengers for hire, except street cars." 5. By subsection 16, which declares that carts, wagons, and drays shall pay annually. 6. By subsection 26, which requires the proprietors of *vehicles for transporting passen-*

*gers for hire* to pay annually. Wherever (as has been shown) the propelling power is considered as fixing or indicating the *amount* of the license it is stated as by way of exception, as, for example, in section 21, subsection 16, hand-carts, and section 21, subsection 26, one-horse cabs. The license is required not for the power, but for the business or vocation.

2. The words, " hacks, cabs, omnibuses, and *other vehicles for transporting passengers for hire* " (Sec. 21, Subsec. 26, act of legislative assembly) manifestly apply to any vehicle; and if (as in this case) such vehicle be used for transporting passengers for hire, a license is required. The Century Dictionary defines the word " hack " as " a carriage kept for hire; a hackney coach," and a " hackney " as " a coach or other carriage kept for hire; also called a hackney coach." The same dictionary defines " vehicle " as " any carriage moving on land, either on wheels or on runners; a conveyance."

Webster defines " vehicle " as " that in which anything is or may be carried; any kind of carriage moving on land, either on wheels or runners. This word comprehends coaches, chariots, gigs, sulkies, wagons, carts of any kind, sleighs, and sleds. These are all vehicles. But the word is more generally applied to wheel carriages, and rarely, I believe, to water crafts." In the construction of statutes, a word which has two significations should, ordinarily, receive that meaning which is generally given to it in the community; but when this construction would contravene the manifest intention of the legislature, effect must be given to the intention. *Held,* a vehicle with four wheels is a cart, as the latter word means a carriage in general. *Favers* v. *Glass,* 22 Ala. 621.

3. The fact that the electric omnibus or automobile was unknown or unheard of when the license law was passed does not entitle its owner or proprietor to conduct the business of carrying passengers for hire without a license. The court will take judicial notice that they are vehicles now in use for purposes of business, and if so, then they are within the object and terms of the law. There is no reason why they should be exempted. They are entitled to law-

fully use the streets, and their owners are subject, of course, to the same liability for negligence as are the owners of other vehicles.  Facts which are a part of the experience and common knowledge of the day are legitimate grounds for the judgment of the court. *Oppenheim* v. *Wolf,* 3 Sandf. Ch. 571.  Courts will take notice of whatever is generally known within the limits of their jurisdiction.  *Brown* v. *Piper,* 91 U. S. 37.  The court will take judicial notice that a thing patented was known and in general use long before the issuing of the patent.  *Terhune* v. *Phillips,* 99 U. S. 592; *King* v. *Gallun,* 109 U. S. 99.  That the legislative intent under the act in question is to be gathered from the usages of society has been decided.  *District* v. *Oyster,* 4 Mackey, 285–286, construing section 21, subsection 22, of same act, referring to produce.  Indeed, the bill of exceptions in this case throughout states that this automobile or electric omnibus *is a vehicle.*  See *State* v. *Collins,* 16 R. I. 371.  One ground of exception in this case is that these electric vehicles in question are exempt because at the time of the passage of the law electric vehicles were unknown.  This objection was considered and overruled in *Parkyns* v. *Preist,* L. R., 7 Q. B. Div. 313.  See also the following cases holding that a bicycle is a vehicle:  *Holland* v. *Bartch,* 120 Ind. 46–50; *Mercer* v. *Corbin,* 117 Ind. 450–455; *Swift* v. *Topeka,* 43 Kan. 671; *Myers* v. *Hinds,* 68 N. W. 156–157; *Thompson* v. *Dodge,* 58 Minn. 555; *Geiger* v. *Perkiomen, etc., Turnpike Road,* 167 Pa. St. 582; *Twilley* v. *Perkins,* 77 Md. 252; *State* v. *Yopp,* 97 N. C. 477; *Moore* v. *District of Columbia,* 12 App. D. C. 541.

Mr. Chief Justice Alvey delivered the opinion of the Court:

The only question presented by the exception, on the information, and the undisputed fact set forth in the exception, is, whether, by proper construction, the 26th subsection of the act of the legislative assembly, referred to in the information, does apply to and embrace the electric ve-

hicles described in the evidence and used by the defendant, and for which the defendant has failed or refused to obtain license.

The language of the section of the act in question is very broad and unqualified, and if the electric vehicles, now used by the defendant, had been known and in use at the time of the passage of the act, there would have been good ground for assuming the applicability of the terms of the act to them, and that their use would have been subject to license, although not specifically mentioned in the act. But it is a known fact, and is conceded, that these electric vehicles are of novel and recent invention as to practical use, and that they were unknown to and certainly not within the contemplation of the authors of the act of the legislative assembly, at the time of the passage of that act, as vehicles for the transportation of passengers. The act in terms declares that " hacks, cabs, omnibuses and *other vehicles for transportation of passengers for hire, shall pay annually* ", etc. The terms, " other vehicles " were intended manifestly to embrace only such other vehicles as were *ejusdem generis.* It was not intended certainly to embrace every conceivable vehicle that might thereafter be invented and brought into use. It is not pretended that every vehicle that is run upon the streets for the carriage of passengers is subject to a license tax under the provision of the act of the legislative assembly in question. Bicycles and tricycles are vehicles that are daily and constantly used for the transportation of persons, but no one pretends that they are subject to the license tax, though they may be hired to the persons who use them. The electric carriage or automobile, though a vehicle, does not belong to the class nor classes of vehicles made the subjects of the tax by the provision of the act of the legislative assembly. It is not fair to assume, if these electric carriages had been known and in use at the time the license act was passed that the rate of license would have been the same for their use, as the rate prescribed in the act for other vehicles. Indeed, there would have been strong reasons for a rate less

in amount; as they cause less wear and breaking of the streets, and produce greatly less filth and dirt than result from vehicles worked by horses.

Applying the well-settled general principle applicable in the construction of revenue or tax laws, there would seem to be, at least, reasonable ground for holding that the electric carriages or vehicles used by the defendant are not fairly within the meaning and purview of the license act of the legislative assembly. All the authorities agree in maintaining, that all charges upon the citizen must be imposed by clear and unambiguous language; because, as it is said, they operate as penalties. In a case of doubt, that construction most beneficial to the citizen must be adopted. This is illustrated by many decided cases.

In the case of *Adams* v. *Bancroft,* 3 Sumner, 384, 387, Mr. Justice Story stated the rule upon this subject in these terms: "I may add, in this connection, that laws imposing duties are never construed beyond the natural import of the language, and duties are never imposed upon the citizen upon doubtful interpretation, for every duty imposes a burden on the public at large, and is construed strictly, and must be made out in a clear and determinate manner from the language of the statute."

In the subsequent case of *United States* v. *Wigglesworth,* 2 Story Rep. 369, the same learned judge, in laying down the rule, said: "It is, as I conceive, a general rule in the interpretation of all statutes levying taxes or duties, upon subjects or citizens not to extend their provision by implication beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out, although standing upon a close analogy. In every case, therefore, of doubt, such statutes are construed most strongly against the government, and in favor of the citizen, because burdens are not to be imposed nor presumed to be imposed beyond what the statutes expressly and clearly import."

Enforcing the same principle, the Supreme Court of Massachusetts, in the case of *Sewell* v. *Jones,* 9 Pick. 412,

said: " Statutes which impose restrictions upon trade or common .occupations, or which levy an excise or tax upon them, must be construed strictly."

To these cases many others of like import could be added, but it is unnecessary to cite more.

Upon careful consideration, in view of the special nature of the case, and the authorities upon the subject, we have arrived at the conclusion that there was error in the ruling of the police court, and that its judgment must be reversed, and it is so ordered. *Judgment reversed and cause remanded.*