**ACADIA BRANDYWINE TOWN CENTER, LLC, a Delaware limited liability company, Acadia Market Square, LLC, a Delaware limited liability company,**

**and**

**Acadia Brandywine Holdings, LLC, a Delaware limited liability company, Plaintiffs Below Appellants,**

**v.**

**NEW CASTLE COUNTY and State of Delaware, Division of Revenue, Defendants Below Appellees.**

No. 449,2004.

Supreme Court of Delaware.

Submitted: June 8, 2005.
Decided: July 21, 2005.

---

Melvyn I. Monzack (argued), Mary Elizabeth M. Browder and Michael C. Hochman of Monzack and Monaco, P.A., Wilmington, Delaware for appellants.

Joseph Patrick Hurley, Jr. (argued), Department of Justice, for Division of Revenue.

Dennis J. Siebold (argued), New Castle County Law Department for New Castle County.

* Sitting in designation pursuant to Del. Const. Art. IV § 12.

Before, STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, Justices, and NOBLE, Vice Chancellor,* constituting the court en banc.

STEELE, Chief Justice.

Two groups of limited liability companies effected a reverse merger, with one receiving real property and the other cash. The surviving company paid the state and county real estate transfer taxes and then filed an action in the Superior Court seeking a declaratory judgment that mergers are not conveyances of real property that are subject to the Delaware realty transfer tax. The issue is whether the General Assembly, by legislation enacted in 1986, intended to continue exempting mergers from the realty transfer tax, consistent with a 1984 regulation that specifically exempted mergers from the tax. Answering no, the trial judge found that the reverse merger transferred real estate and therefore constituted a conveyance subject to the realty transfer tax. We determine that because the 1986 legislation and its accompanying regulations fail to evidence a clear intent to eliminate mergers as one of the putative abuses of the transfer tax, reverse mergers involving real estate continued not to be subject to the realty transfer tax. We therefore reverse.

## I.

In 2002, Acadia Realty Trust, a publicly-traded real estate investment trust that owns and manages several shopping centers nationwide, expressed an interest in commercial property owned by three Rollins family companies—B.T. Center Arc LLC, B.T. Center Associates, and Market Square at the Town Center LLC ("Rollins Entities"). Collectively, the Rollins Entities owned the Brandywine Town Center and Market Square, a shopping mall locat-

ed in New Castle County. In late 2002, anticipating a deal with the Rollins family, Acadia Realty formed three holding companies—Acadia Brandywine Holdings LLC, Acadia Brandywine Town Center LLC, and Acadia Market Square LLC ("Acadia Entities").

By January 2003, Acadia Realty and the Rollins family had reached an agreement to combine their respective entities. The two effected a reverse merger that absorbed the Acadia Entities into the Rollins Entities. As the survivors of the merger, all property and accompanying rights and liabilities remained with the Rollins Entities, although the surviving companies ("Acadia Companies") assumed the names of the (now-defunct) Acadia Entities. Following the merger, Acadia Realty "cashed out" the Rollins family's newly acquired ownership interests in the Acadia Companies, thereby eliminating the Rollins family from the merged enterprise and leaving the (former) owners of the Acadia Entities as its sole owners.

Several months later, the Acadia Companies, with full reservation of rights, remitted to the Delaware Division of Revenue and New Castle County amounts presumably due under the Delaware Realty Transfer Tax and under a similar provision of the New Castle County Code.[1] Disputing the payment, the companies then filed an action in the Superior Court, seeking a declaratory judgment that real property changing title by means of the above-described merger did not constitute a "conveyance" of real estate and therefore was not subject to the realty transfer tax. Shortly thereafter, the Acadia Companies and the State filed cross-motions for summary judgment.[2]

In September 2004, the trial judge granted summary judgment to the State.[3] Looking to the text of the realty transfer tax statute and its 1984 and 1986 implementing regulations, the trial judge found that the timing, percentage of ownership change, duration of ownership status, and business purpose surrounding the merger indicated that "it would be folly to try to argue that this transaction is anything more than a legal procedure intended to transfer real estate properties."[4]

As a result, the trial judge found that, "in spite of the 1984 tax regulations," the merger was "properly characterized as a sale of real estate," and thus subject to the realty transfer tax.[5] The Acadia Companies now appeal, claiming that the trial judge improperly enlarged the scope of the realty transfer tax by failing to give effect to a 1984 regulation that exempts mergers from taxation. We review the trial judge's grant of summary judgment based on judicial construction of a statute *de novo*.[6]

## II.

### A.

The Delaware realty transfer tax provides that "[e]very person who ... pres-

1. 30 *Del. C.* §§ 5401–5425; New Castle County Code § 14.10.001(B) (2004).

2. New Castle County, although not a party to the trial judge's summary disposition, joins the State in opposition to the Acadia Companies' appeal, citing the similarity between its ordinance and the state statute. In its answering brief, the County informs us that "[f]or consistency and ease of reference, [it] will refer in this brief to the language of the State statute." We do the same throughout this Opinion.

3. *Acadia Brandywine Town Ctr. LLC v. New Castle County,* 2004 WL 2050498, 2004 Del.Super. LEXIS 286.

4. *Id.* at *7, 2004 Del.Super. LEXIS at *22.

5. *Id.*

6. *Colonial Ins. Co. v. Ayers,* 772 A.2d 177, 179 (Del.2001).

ents for recording any document ... shall be subject to pay for and in respect to the transaction, or any part thereof, a realty transfer tax...."[7] The term *document* is broadly defined by statute to include "any deed, instrument, or writing whereby any real estate ... shall be quitclaimed, granted, bargained, sold, or otherwise conveyed to the grantee...."[8] The term document does not include "any conveyance to or from a corporation" where the grantor or grantee owns stock of the corporation "in the same proportion as the grantor's or grantee's interest in ... the real estate being conveyed...."[9]

On the authority of this latter provision, the Division of Revenue promulgated a regulation in 1984 that imposes a tax on the "conveyance of real estate to a corporation in consideration of the issuance by the corporation to such grantor of capital stock."[10] By doing so, the Division distinguished that type of transaction from the statutorily-identified one wherein the grantor or grantee already owns an interest in the corporation proportionate to the value of the real property being transferred. The 1984 regulation further distinguished merger transactions between two companies:

> In the case of a merger between two corporations in which there is no recording of a document pertaining to real estate, the tax does not apply. However-

er, where deeds or documents ... are filed or recorded in connection with a merger, then the conveyance is taxable.[11]

As a result, the Division of Revenue considered the merger of two companies involving unrecorded real estate transfers to be an event conceptually and legally distinct from those transfers consummated "in consideration of the issuance ... of capital stock." That 1984 regulation has remained in effect at all relevant times.

With this merger exemption in place, the General Assembly amended the tax scheme in 1986 to "close existing loopholes in the realty transfer tax."[12] Under a synopsis heading titled "Corporations," the General Assembly identified as a "current abuse" transactions where taxpayers convey real property to a corporation of which they own 100 percent of the stock, a tax-free event under the statute in both 1984 and 1986, and then sell the company's stock—rather than sell the real property directly—to a buyer seeking to purchase the realty.[13] The General Assembly also identified similar "abusive" transactions involving partnerships and trusts.[14]

Under the 1986 Amendment, a tax may be assessed even where no documents are filed. The amended statute reads:

> [W]here beneficial ownership in real estate is transferred through a conveyance

---

7. 30 *Del. C.* § 5402(a).

8. *Id.* § 5401(1).

9. *Id.* § 5401(1)(n).

10. State of Delaware, Div. of Revenue, Realty Transfer Tax Regs., TIM 84–4 (June 1, 1984), at § 4.2(h) ¶ 1.

11. *Id.* ¶ 2.

12. *See* Synopsis, 65 Del. Laws, Ch. 426 (1986) [hereinafter Synopsis], *codified at* 30 *Del. C.* § 5401(7).

13. *See* Synopsis at (a) (*"A* conveys the property to a wholly-owned corporation (exempt from a tax under § 5401(4)(n) [*sic* ]) and sells the stock of the corporation to *B* (exempt since the sale was of stock, not property).")*.* The synopsis erroneously refers to subsection (4)(n), a nonexistent provision, then or now. Based on the substance of the example, we assume that the General Assembly meant to refer to subsection (1)(n), which discusses transfers of real property to or from companies in which the transferor or transferee already owns stock.

14. *See id.* at (b), (c).

or series of conveyances of intangible interests in a corporation ..., such conveyance shall be taxable under this chapter as if such property were conveyed through a duly recorded document .... [15]

A later subsection modifies this general rule:

> Where the beneficial owners of real property prior to the conveyance or series of conveyances referred to in this subdivision own less than 80 percent of the beneficial interest in the real estate following said conveyance or conveyances, such transfers shall not be subject to tax ... unless ... such transfer or transfers are properly characterized as a sale of real property.[16]

To "properly characterize" a transaction as a "sale of real property," the statute directs the decisionmaker to take into account the "timing of the transaction," "beneficial ownership prior to and subsequent to the conveyance," the "business purpose of the corporation," and other factors that may be relevant under the circumstances.[17] Neither the 1986 Amendment nor its synopsis identifies or refers to the 1984 regulation's specific exemption of mergers that result in a change of real-property ownership. Nor has the Division of Revenue ever rescinded its 1984 regulations.[18]

### B.

The Acadia Companies argue that a merger cannot be classified as a transaction "where beneficial ownership in real estate is transferred through a conveyance ... of intangible interests in a corporation" because the 1984 regulation expressly exempts mergers wherein no documents are recorded. Accordingly, they claim that because the combination of the Rollins and Acadia Entities, while effecting the transfer of real estate, never required the filing of a document within the meaning of the statute. Therefore, no transfer tax is due.

In response, the State contends that the 1986 amendment is meant to capture any transaction that purports to convey beneficial ownership in real estate through a transfer of intangible interests, including interests in a limited liability company. According to the State, any transaction that can be properly characterized as a sale of real estate, regardless of form, is taxable. Thus, the State claims that because mergers can be used to transfer the beneficial ownership of real property, and because the transaction here, despite the 1984 regulation, was structured primarily to do just that, the Rollins–Acadia combination is a taxable event.

### C.

The primary goal of statutory construction is to "ascertain and give effect to the intent of the legislature."[19] In the case of revenue laws, we follow the well-settled rule of construction that prohibits extending a taxing statute's provisions "beyond the clear import of the language used" or enlarging its operation to "embrace matters not specifically pointed out, although standing in close analogy."[20]

---

15. 30 *Del. C.* § 5401(7)(a) (quotation marks omitted).

16. *Id.* § 5401(7)(c).

17. *Id.*

18. *See* State of Delaware, Div. of Revenue, Regulations, *at* http://www.state.de. us/reve-

nue/informati on/tims/Realty_Tran s_Tax. shtml (listing revenue regulations in effect) (last accessed June 13, 2005).

19. *Dir. of Revenue v. CNA Holdings, Inc.*, 818 A.2d 953, 957 (Del.2003) (citation omitted).

20. *Arbern–Wilmington, Inc. v. Director of Revenue*, 596 A.2d 1385, 1388 (Del.1991).

Thus, if there is doubt regarding the breadth of a taxing statute, we must construe the statute against the taxing authority and in favor of the taxpayer.[21]

Although the 1986 Amendment purports to apply to any "conveyance or series of conveyances of intangible interests in a corporation" without limitation, the legislation is ostensibly designed to close only "existing loopholes" in the realty transfer tax. As evidenced by the synopsis and the Division of Revenue's later regulations,[22] the 1986 Amendment sought to subject to tax those transactions where individuals seek to use their wholly-owned corporations as a vehicle to effect a sale of real estate through the safe harbor provisions of Section 5401(1)(n), a provision the bill's drafters explicitly referenced. Nowhere in the 1986 Amendment or its synopsis, however, does the General Assembly identify mergers of entities that own realty and where no document transferring title to realty is recorded as a "current abuse." Similarly, the Division of Revenue remains deafeningly silent about any intended change in the tax treatment of such mergers in its 1986 regulations.[23]

The existence of the 1984 merger exemption sheds light on the reach of the 1986 Amendment. Once promulgated, that exemption established an unequivocal standard, applicable to certain combinations, that enabled businesses owning real estate to know, in advance, which business combinations would or would not be taxed. Thus, at the time the General Assembly drafted the 1986 Amendment, mergers un-accompanied by recorded documents were categorically outside the reach of the realty transfer tax. If the General Assembly wished to alter that state of affairs, it easily could have done so by identifying mergers that entailed changes of ownership in real property—a high-profile, widespread form of business combination—as a "current abuse" of the realty transfer tax scheme.

Instead, by identifying a different form of corporate "abuse" of the tax statutes, the General Assembly chose to focus on taxpayer transfers of property to wholly-owned corporations via Section 5401(1)(n). The 1986 regulations, consistent with the legislature's view, describe similar transactions relating to individuals who use corporations solely as middlemen to effect sales of real estate to other individuals. Focusing on an existing statutory safe harbor, the General Assembly determined that allowing an individual to transfer real property to a wholly-owned corporation shortly before selling the stock ownership interest in the company, and thereby to escape an assessment of the realty transfer tax, constituted an abuse. Nowhere did the General Assembly address the merger of two preexisting companies, however.

Nor could it have without expressly repealing the existing 1984 regulations under which mergers were exempt. Identifying mergers legislatively as an example of abuse would evidence an intent to undo those transactions' well-established and predictable tax-exempt status. Unlike the purported "abuse" the General Assembly

**21.** *Id. Cf. United States v. Wigglesworth,* 28 F. Cas. 595, 596–597 (C.C.D.Mass.1842) (No. 16,690) ("In every case, therefore, of doubt, such statutes are construed most strongly against the government, and in favor of the subjects or citizens, because burdens are not to be imposed, nor presumed to be imposed, beyond what the statutes expressly and clearly import.").

**22.** *See* STATE OF DELAWARE, DIV. OF REVENUE, TIM 86–9 (Dec. 18, 1986), at I ("This Technical Information Memorandum sets forth the Regulations for implementation of [the 1986 Amendment].").

**23.** *See id.* at II (reiterating corporation, partnership, and trust examples in 1986 Amendment synopsis).

identified by reference to Section 5401(1)(n)—where individuals use the safe harbor as a first step to effecting a two-step transaction that amounts to a sale of real property—mergers entail only a single step. Because of this structural distinction, and the corresponding silence about the current practice, neither the 1986 Amendment nor its implementing regulations give a clear notice that the General Assembly sought to repeal the 1984 merger exemption when it passed the 1986 legislation.[24]

We recognize that the Rollins and Acadia Entities here carried out a transaction that, once completed, resulted in the indirect exchange of real estate for cash. Acadia Realty, through the Acadia Companies, received an interest in property beneficially owned by entities controlled by the Rollins family. Once the survivor gained title to the property, it immediately cashed out the Rollins' newly-acquired ownership interest, leaving Acadia Realty as the sole beneficial owner.

Despite these features, the transaction in issue is also undeniably a merger between two preexisting companies. There is no evidence that the merger of two companies was legislatively regarded as an "abuse" of an established, preexisting tax exemption. Therefore, the State's position can be sustained only if the General Assembly had expressly stated that it desired to undo its previously expressed and sanctioned status quo. But because the General Assembly focused on a structurally- and statutorily-distinct type of transaction, we cannot read the 1986 legislation to encompass mergers, particularly where, as here, the 1984 regulation continues to expressly exempt them. To do otherwise would be to import an altering provision into the statute that finds no explicit support in the text and contravenes our policy of interpretive restraint in construing taxing statutes.

## III.

For these reasons, the judgment of the Superior Court is **REVERSED**.

---

24. *See, e.g., Giuricich v. Emtrol Corp.,* 449 A.2d 232, 239 (Del.1982) ("A Legislature is presumed to be aware of existing law."); *DuPont v. DuPont,* 87 A.2d 394, 399 (Del.1952) ("Laws are assumed to be cumulative, not destructive of other laws.").